**07-4203-cv**
**Kendall v. Employee Retirement Plan of Avon Products**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

——————

August Term, 2008

(Argued: Sept. 23, 2008                                              Decided: March 25, 2009)

Docket No. 07-4203-cv

——————

IRENE M. KENDALL, PERSONALLY AND ON BEHALF OF ALL SIMILARLY SITUATED,

*Plaintiff-Appellant,*

−v.−

EMPLOYEES RETIREMENT PLAN OF AVON PRODUCTS, RETIREMENT BOARD, AS PLAN ADMINISTRATOR,

*Defendants-Appellees.*

——————

Before:

WESLEY, HALL, GIBSON,[1] *Circuit Judges.*

Appeal from an order of the United States District Court for the Southern District of New York (Batts, *J.*), entered on September 14, 2007, granting defendants-appellees' motion to dismiss plaintiff's complaint in part for lack of standing and in part for failure to state a claim upon which relief could be granted. Plaintiff, a retirement plan participant under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, claims she has constitutional standing to bring a class action suit alleging breach of fiduciary duty by the plan

---

[1] The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

administrator in failing to enforce a plan that complies with ERISA and seeking both to amend her retirement plan to comply with ERISA and for a recalculation and repayment of benefits to her and similarly situated plaintiffs after the plan is brought into compliance with ERISA. The plan participant first claims that 29 U.S.C. § 1132(a)(3) confers standing and that as a result she need not demonstrate an injury-in-fact. Second, the plan participant claims she is injured by the plan's failure to comply with ERISA because were the plan to comply she would receive a greater amount of benefits, but the plan participant only alleges a specific quantifiable injury with regard to a claim she failed to raise before the district court and has thus waived on appeal. We disagree with the plan participant. A plan participant must demonstrate some cognizable injury-in-fact to satisfy constitutional standing when claiming that the plan administrator breached a fiduciary duty or that a plan violates ERISA. Also, we find no risk of manifest injustice warranting us to consider her belated claim. Accordingly, we affirm.

AFFIRMED.

———————

EDGAR PAUK, New York, NY, *for Plaintiff-Appellant*.

CAITLIN J. HALLIGAN, Weil, Gotshal & Manges LLP, New York, NY (Jeffrey S. Klein, Nicholas J. Pappas, *on the brief*), *for Defendants-Appellees*.

———————

WESLEY, *Circuit Judge*:


**Background**

Irene Kendall began working for Avon Products, Inc. ("Avon") in 1967 at age thirty. In 1980, she became disabled and collected disability benefits from Avon. Although she became eligible for early retirement in 1995 under Avon's retirement plan (the "Plan"), she continued to collect disability benefits, and to accrue years of service under the Plan, until 1999.

The Plan provides for an accrued benefit[2] within the meaning of the relevant provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, at the statutory "normal retirement age" of sixty-five[3] pursuant to a formula: 1.75% of the Plan participant's average final compensation for the first ten years of service + 1.5% of the average final compensation of years the Plan participant worked in excess of ten – 1.25% of the Plan participant's Social Security benefits multiplied by years of service completed after the month the Plan participant turns age twenty-five up to a maximum of fifty years.[4] The latter figure is known as the Social Security offset ("Offset").

Under the Plan, the Plan participant can elect to retire early and receive benefits when the sum of the Plan participant's years of employment and the Plan participant's age equal eighty-five (the "Rule of 85" or the "Rule"). The accrued benefit calculation for Plan participants who opt to retire under the Rule of 85 is the same as the calculation for those that retire at age sixty-five, but the Offset deducted from the Rule of 85 Plan participant's accrual benefit is reduced

---

[2] "The term 'accrued benefit' means (A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054 (c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23).

[3] "The term 'normal retirement age' means the earlier of (A) the time a plan participant attains normal retirement age under the plan, or (B) the later of (i) the time a plan participant attains age 65, or (ii) the 5th anniversary of the time a plan participant commenced participation in the plan." 29 U.S.C. § 1002(24).

[4] This calculation comes from the 1994 Plan. In the previous plan, adopted in 1977, the Social Security offset was multiplied by the first forty years of service beginning from when the Plan participant first began working.

until age sixty-five.[5]  Therefore, Plan participants who retire before the age of sixty-five under the Rule of 85 provision could theoretically receive higher benefits per year than those employees that retire at age sixty-five who have the identical salary, position, and have served the same amount of time.  By the time the retired Plan participants reach age sixty-five, the Offset is no longer discounted.

A. Kendall's Claim for Relief

Kendall filed a class action complaint on behalf of "[a]ll Plan participants . . . with one hour of service on or after January 1, 1976, who[ have] accrued benefits" under the Plan.  She alleges that the Plan violates various provisions of ERISA and seeks revision of the Plan.

*1. Claims I and IV: Plan Violates 29 U.S.C. § 1054(b)(1)(B)*

In Claims I and IV of her complaint, Kendall alleges that the Rule of 85 portion of the Plan violates 29 U.S.C. § 1054(b)(1)(B).[6]  Under that section, a plan must meet two

---

[5] The reduction of the Offset is 1/12 of 3% (0.25%) for each of the first five years the Rule of 85 date precedes normal retirement age and 1/12 of 5% (0.417%) for each month in excess of five years.  For instance, if a Plan participant begins working for Avon at age twenty and works for thirty-five years till the Plan participant is age fifty-five, the Plan participant can retire under the Rule of 85 because the Plan participant's years of employment plus age will be ninety – greater than eighty-five.  Because there is a ten-year gap between the Plan participant's age and the normal retirement age of sixty-five, the Offset taken out of the Plan participant's accrued benefit under the Plan is reduced by 0.25% for the first five years after the Plan participant retires and by 0.417% for the other five years.  When the retired Plan participant reaches age sixty-five, the Offset will no longer be reduced and the Plan participant will receive the same accrued benefit as others who retired at age sixty-five under the Plan.

[6] A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at

requirements: (1) the accrued benefit payable at normal retirement age must be equal to the normal retirement benefit; and (2) the rate of accrual at normal retirement age cannot exceed 133 1/3% of the accrual rate from the prior year.

The "normal retirement benefit" referred to in the first § 1054(b)(1)(B) requirement is the greater of: (1) the early retirement benefit under the plan; or (2) the benefit under the plan commencing at normal retirement age. 29 U.S.C. § 1002(22); *see also* 26 C.F.R. § 1.411(a)-7(c)(2)(ii).[7] Because § 1054(b)(1)(B) requires the normal retirement benefit and the benefit accrued at normal retirement age to be equal, the early retirement benefit cannot be greater than the benefit accrued at normal retirement age. In Claim IV, Kendall contends that the Rule of 85 violates the first requirement because, in her view, the early retirement benefit conferred by the Rule of 85 would be greater than that benefit under the Plan commencing at normal retirement age.

---

which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year. For purposes of this subparagraph—

(i) any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years;
(ii) any change in an accrual rate which does not apply to any individual who is or could be a participant in the current year shall be disregarded;
(iii) the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded; and
(iv) social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after the current year.

29 U.S.C. § 1054(b)(1)(B).

[7] "In the case of a plan under which a benefit is payable as an annuity in the same form upon early retirement and at normal retirement age, the greater benefit is determined by comparing the amount of such annuity payments." 26 C.F.R. § 1.411(a)-7(c)(2)(ii).

Regarding the second requirement, the annual accrual rate of a plan must not increase by more than 133 1/3% from one year to the next. For example, if under a retirement plan, a plan participant's rate of accrual in 2008 is $100 per year, the plan participant's rate of accrual in 2009 could not exceed $133.33 per year, that figure being 133 1/3% of the 2008 accrual rate. *Cf.* Joint Appendix at 16-17 (providing an example of a situation in which the Rule of 85 as applied to a hypothetical Plan participant would violate the second requirement of § 1054(b)(1)(B)). In Claim I, Kendall alleges that due to the reduction in Offset under the Rule of 85, the Rule violates § 1054(b)(1)(B); she seeks to revise the Plan to retroactively reduce rates of accrual to be no "smaller than 75% of the rate of accrual in effect at the earliest possible Rule of 85 Retirement Date."

*2. Claim II: Offset Termination Changed Base for Benefit Computation*

In Claim II of her complaint, Kendall asserts that the Plan's general Offset provision violates § 1054(b)(1)(B) by discontinuing the Offset after fifty years of employment. She argued at the district court that discontinuing the Offset changed the base of computing the normal retirement benefit after the fiftieth year of employment. According to Treasury Department regulations, "a base for computation of retirement benefits [may not] change[] solely by reason of an increase in the number of years in participation." 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F). Kendall claims that the discontinuance of the Offset after fifty years of service effectively increased the benefits a plan participant receives based solely on increased years of service; she seeks elimination of the Offset for all Plan participants.

*3. Claim III: Withholding Offset Until Age Twenty-Five Reduces Benefits Based on Age*

Kendall also challenges the provision withholding the Offset until an employee reached age twenty-five, claiming that it effectively reduces the employee's accrued benefit upon reaching age twenty-five. She asserts that this violates § 1054(b)(1)(H)(i), which bars a reduction in accrued benefits "because of the attainment of any age." She seeks to eliminate the Offset for all Plan participants.

*4. Claims V and VI: Plan Amendment Decreases Benefits*

Kendall does not appeal the district court's dismissal of these claims.

*5. Claim VII: Method of Annualizing Partial Payment Violates Regulations*

Kendall contends that the calculation used to determine Average Final Compensation ("AFC") – the dollar amount upon which benefits calculations are based – under section 1.5 of the 1994 Plan violates IRS Regulation 26 C.F.R. 1.411(a)-7(c)(5). Under 26 C.F.R. 1.411(a)-7(c)(5), if a plan bases its normal retirement benefits on compensation, the compensation must reflect the compensation which would have been paid for a full year of participation in the plan. Under the 1994 Plan, the AFC is the employee's five highest years of compensation within the last ten years of employment. All partial-year compensation is annualized. If the annualized compensation is one of the five highest years of compensation, the annualized compensation year will be replaced by the sixth highest compensation year. Kendall claims that this replacement reduces the AFC and therefore the benefit that has accrued under the Plan. 26 C.F.R. 1.411(a)-7(c)(5) requires that compensation used to calculate benefits must reflect what would have been paid for a full year of participation in a plan. Kendall argued in the district court that substituting a theoretical higher earning year, the annualized year, for the lower earning year, violated the

regulation.

*6. Claims VIII and IX: Amendments Reduces Benefits and Failure to Notify Violates ERISA*

Kendall claims that the use of the 1994 Plan to calculate benefits prior to the effective date of the 1994 Plan violated § 1054(g) (Claim VIII), and that the Plan administrator violated § 1054(h) by failing to give timely notice prior to the effective date (Claim IX).

*7. Relief Sought at the District Court*

Kendall requested that the district court: (1) "Declare that the challenged Plan provisions violate ERISA"; (2) "Enjoin the Plan from enforcing said provisions"; (3) "Order [Avon,] to reform the Plan to bring it into compliance with ERISA"; (4) "Order [Avon] to recalculate the accrued benefits or pensions of all Class members under the terms of the reformed Plan"; (5) "Order [Avon] to pay to the members of the Class who are pensioners or beneficiaries receiving benefits, the difference between the amounts paid to them and the amounts due under the reformed Plan"; (6) "Order [Avon] to account for all the ill-gotten gains and earnings that resulted from the violations of ERISA"; (7) "Order [Avon] to disgorge and pay to the Class their ill-gotten gains and earnings"; and (8) order Avon to pay costs and attorney's fees.

B. District Court Decision

In response to the complaint, Avon filed a motion to dismiss Kendall's complaint for lack of standing and for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion. The court dismissed Claims II, III, VII, VIII, and IX for lack of standing and Claims I, IV, V, and VI for failure to

state a claim upon which relief could be granted.[8]

C. Kendall's Appeal

Kendall appeals to this Court with respect to all claims except V and VI. Kendall contests she has standing to bring her claims because: (1) 29 U.S.C. § 1132(a)(3) confers standing to bring claims of ERISA violations regardless of whether she was personally injured; or, alternatively, (2) she was directly injured by the ERISA violations because "once the terms of the Plan are brought into compliance with ERISA, the amount of her pension will be higher. Exactly how much higher will be known only after reformation of the Plan." Kendall also alleges a specific calculable injury with regard to Claims VII, VIII, and IX, claiming that the AFC used to calculate her benefits would have been higher had the Plan conformed to governing regulations. However, Kendall only provides specific calculations of her injury under section 1.10(d) of the 1994 Plan, which applies only to Plan participants who qualify for disability benefits. Kendall did not claim injury under this provision or provide this calculation before the district court.

With regard to Claim I, Kendall argues that the Rule of 85 is an accrued benefit under this Court's case law and therefore must be taken into account when considering whether the Plan violates § 1054(b)(1)(B)'s second requirement. With regard to Claim IV, Kendall contends that the Rule of 85 benefit is greater than any accrued benefit at normal retirement age because the Court should measure each accrued benefit based on absolute amounts and not hypothetical

---

[8] The district court dismissed claims V and VI noting that Kendall received a higher benefit under the 1994 amendments to the Plan and that Kendall had agreed to dismissal.

actuarial values.[9]

With regard to Claims II, III, VII, VIII, and IX, Kendall asserts the same basic arguments raised in her complaint except the addition, in Claim VII – relating to Claims VIII and IX – of an allegation that Section 1.10(d)'s method of annualizing Kendall's disability benefits also violates ERISA.[10]

## Discussion

We conclude that Kendall lacks standing to bring Claims I, II, III, and IV.[11] We are also of the view that with regard to Claims VII, VIII, and IX she was given ample opportunity to amend her complaint to allege an ERISA violation under the correct provision of the Plan. Thus, we see no reason to allow her to effectively amend her complaint on appeal.[12]

---

[9] For example, assume an employee qualified for early retirement at age sixty under a plan that had a 10% Social Security offset with a 50% reduction in that offset for early retirees, and absent an offset that employee would receive $100 based on the number of years worked. If that employee retired at age sixty they would receive $95 (benefit - (10% of benefit - 50% of 10% of benefit)) ($100 - ((0.1x100) - (0.5x(0.1x100)))). If a sixty-five-year-old employee receiving $100 benefit before the offset retired, however, that employee would receive $90 (benefit - (10% of benefit)) (100 - (0.1x100)).

[10] Kendall also asks that the matter to be remanded to a different court because the district court took three years to rule on Avon's motion and because its ruling relied heavily on the language in Avon's memorandum in support of its motion to dismiss.

[11] Although Avon concedes that Kendall has standing to bring Claims I and IV, this Court has an independent obligation to examine standing, and finding it lacking, may dismiss on those grounds. *See Thompson v. County of Franklin*, 15 F.3d 245, 248-49 (2d Cir. 1994).

[12] Because we affirm the district court's order dismissing Kendall's claims, we need not determine whether Kendall's case need be remanded to a different court.

We review constitutional standing *de novo*, *Cent. States Se. & Sw Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 197 (2d Cir. 2005) (hereinafter *Central States I*), and statutory standing *de novo*, provided the statutory standing questions are of a legal nature, *see United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999). In deciding questions of standing, this Court accepts as true all material allegations of the complaint and construes the complaint in favor of the complaining party. *Fin. Insts. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 149 (2d Cir. 1992) (hereinafter *FIRF*).

A plan participant suing under ERISA must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty. *See Central States I*, 433 F.3d at 199 (noting that statutory standing "does not necessarily provide constitutional standing") (internal quotation marks omitted). Plan participants have statutory standing to bring a civil action to: "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Article III confines constitutional standing to plaintiffs who can establish that they have suffered some injury-in-fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). There are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal

connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision. *id.* at 560-61. In a class action, once standing is established for a named plaintiff, standing is established for the entire class. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 241 (2d Cir. 2007) (hereinafter *Central States II*).

"To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (internal quotation marks omitted); *see also Lujan*, 504 U.S. at 560. "[T]o support standing, the plaintiff's injury must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." *Baur*, 352 F.3d at 632 (internal citation omitted).

In certain situations, "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotation marks omitted). "[T]he standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.*

Kendall contends that she need not show individualized harm as a Plan participant under § 1132(a)(3) to assert constitutional standing, but that in any event she has suffered injuries in fact that include: (1) Avon's alleged breach of fiduciary duty owed to her to comply with ERISA,

**[Blue 26]** *see* 29 U.S.C. § 1104(a)(1)(D);[13] (2) the Offset under the Plan prevents her from realizing higher benefits;[14] (3) Avon's improper calculation of her AFC under the regulations denied her a higher benefit; and (4) when the Plan is modified to comply with ERISA, she will necessarily receive a higher benefit because 29 U.S.C. § 1054(g) requires that no plan amendment reduce a participant's benefit.

Her first argument – that ERISA, or specifically § 1132(a)(3), does not require a showing of direct injury – is a clear misstatement of law. Kendall overlooks the fact that she must allege some injury or deprivation of a right, even if that right is statutorily created. *See Warth*, 422 U.S. at 500. Furthermore, § 1132(a)(3) only applies to claims for injunctive relief, and despite Kendall's assertions to the contrary, many of Kendall's claims are effectively claims for money damages outside the scope of § 1132(a)(3). In particular, Kendall asked the district court to, among other things: (1) "Order Defendants to pay to the members of the Class who are pensioners or beneficiaries receiving benefits, the difference between the amounts paid to them

---

[13] "Subject to sections [1103(c) and (d), 1342, and 1344], a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this title." 29 U.S.C. § 1104(a)(1).

[14] Although it is not clear from Kendall's brief, there are two ways of concluding that Kendall as a Plan participant may benefit from revision of the Plan to terminate the Offset elimination or reduction for other Plan participants: (1) Kendall argues that because the Offset is not deducted from benefits paid to Plan participant employees below age twenty or who have worked for over fifty years with Avon and deducted in lesser amounts from benefits for those who qualify for the Rule of 85 provision, her Offset is made higher to cover the difference; or (2) If the Offset is eliminated entirely for all Plan participants, assuming that all other provisions of the Plan remain static, Kendall would receive higher benefits because these benefits would not be reduced by the Offset.

and the amounts due under the reformed Plan"; (2) "Order Defendants to account for all the ill-gotten gains and earnings that resulted from the violations of ERISA"; (3) "Order Defendants to disgorge and pay to the Class their ill-gotten gains and earnings"; and (4) order defendants to pay costs and attorney's fees.

In *Central States I* we held that "[r]equests for restitution or disgorgement under ERISA are different from requests for injunctive relief. Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss, to wit, that they have suffered an injury-in-fact." 433 F.3d at 200 (internal citations, quotation marks, and alteration omitted). The Supreme Court has presaged this rationale, noting "[a]lmost invariably suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (alterations and internal quotation marks omitted). Kendall's claims for payment of benefits under a revised Plan and fees is effectively a request for a disgorgement of funds Kendall believes Avon gained by not paying out benefits under a plan that conforms with ERISA. We therefore require that Kendall demonstrate some injury-in-fact to have standing to bring these claims.

Kendall's second argument – that she suffered an actual injury-in-fact – requires examining the rights ERISA confers on plan participants alleging a breach of fiduciary duty and the resultant loss of benefits.

*1. Breach of Fiduciary Duty*

Kendall's breach-of-fiduciary-duty claim is based on the simple contention that Avon had a fiduciary duty to execute a pension plan that complied with ERISA. There is no doubt that ERISA imposes on plan fiduciaries a duty to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). The statute does impose a general fiduciary duty to comply with ERISA, but it does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach of the duty. *See Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 85-86 (2d Cir. 2001).

Kendall looks to *Central States I* to support her argument that a plaintiff has standing to sue for a breach of fiduciary duty under ERISA without a showing of individualized harm. In *Central States I*, this Court remanded to the district court to determine whether plaintiff plan participants had met the injury-in-fact requirement under *Lujan* in a suit against the benefits manager for ERISA violations. 433 F.3d at 203. We noted that while the Third Circuit had held that a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant, requests for restitution and disgorgement under ERISA require that plaintiffs meet the injury-in-fact requirement of *Lujan*. *Id.* at 199-200 (citing *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (2d Cir. 2003)); *see also Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002) (noting that plaintiffs bringing ERISA claims against a benefit plan must suffer an injury-in-fact). On remand, the district court found, and this Court then

affirmed, that an employee-welfare benefit plan participant had standing to bring an ERISA breach-of-fiduciary-duty claim against the benefits manager because the benefit plan was in a contractual relationship with the benefits manager. *See Central States II*, 504 F.3d at 242. Therefore, neither *Central States I* nor *Central States II* addressed or decided whether a breach of fiduciary duty in and of itself could constitute an injury-in-fact. The *Central States II* Court left for a future panel the resolution of whether plan participants would have "standing to assert the vindication of . . . intangible right[s] . . . ." *Id.* at 243 n.3.

Even in cases where plaintiffs need not show an individualized harm, they must still allege some injury in the form of a deprivation of a right as a result of a breach of fiduciary duty conferred by ERISA. In *Horvath*, the Third Circuit held that a plan participant "need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that [the plan administrator] satisfy its statutorily-created disclosure or fiduciary responsibilities" because under the relevant provisions of ERISA the plan participant had a right to "receive particular information and to have [the plan administrator] act in a fiduciary capacity." 333 F.3d at 456. While the participants did not have to show they were specifically injured, pecuniarily or otherwise, they did have to show that they were generally harmed by the deprivation of a specific right to receive information.

Kendall, however, only alleges that Avon deprived her of her right to a plan that complies with ERISA, deprivations she contends occurred as a result of Avon's breach of its fiduciary duty to comply with ERISA. This argument is obviously circular. While plan fiduciaries have a statutory duty to comply with ERISA under § 1104(a)(1)(D), Kendall must allege some injury or

deprivation of a specific right that arose from a violation of that duty in order to meet the injury-in-fact requirement. *See FIRF*, 964 F.2d at 147. Kendall cannot claim that an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of itself constitutes an injury-in-fact sufficient for constitutional standing.

*2. Elimination of the Offset and General Amendments to the Plan*

Kendall claims that she is also injured by virtue of the fact that she is receiving less in benefits than she would have received under a Plan that did not violate ERISA. Specifically, she seeks an elimination of the Social Security Offset and a recalculation of her AFC giving her higher benefits. More generally, she claims that amending the Plan will increase her benefits by an as-yet-to-be-determined amount when the Plan is modified to conform to ERISA.

A plan participant may allege a constitutional injury-in-fact based on a theoretical injury. In *FIRF*, the district court held that employees lacked standing to bring an ERISA claim against a pension fund for refusing to credit surpluses from the employees' former employer to the payments that the employees' new employer was required to make to the fund. *See id.* at 147. This Court reversed the district court, believing that ERISA "casts a wider net." *Id.* We held the employees had standing to bring a breach-of-fiduciary-duty claim because they were theoretically injured by the funds' mismanagement of assets, some of which could be theirs. *Id.* at 149.

The Seventh Circuit has come to a similar conclusion. In *McCarter v. Ret. Plan for Dist. Managers of Am. Family Ins. Group*, the court found that plan participants who had opted to cash out their retirement plans in a lump sum prior to reaching normal retirement age had standing in an ERISA action to challenge the ninety-day window the plan gave for choosing the lump-sum

opt out. 540 F.3d 649, 650 (7th Cir. 2008). The plan participants argued that limiting the amount of time the participants had to choose the lump-sum opt out violated 29 U.S.C. § 1053(e)(1), which provides that benefits exceeding $5,000 may not be paid out without consent of the participant. *Id.* In conferring standing, the court noted, "[t]he injury [the plan participants] assert – that monthly income at retirement age is diminished if participants are stampeded into taking cash, which then burns holes in their pockets – can be traced to the plans' terms and can be redressed by a judgment in plaintiffs' favor. No more is required for standing." *Id.*

However, in both *FIRF* and *McCarter*, the plaintiffs could point to an identifiable and quantifiable pool of assets to which they had colorable claims. These cases are distinguishable from the case before us. Here, Kendall alleges an injury based on an as-yet-to-be-determined increase in benefits as a result of elimination of the Offset or general amendments to the Plan.

The case before us more closely resembles *Drutis v. Rand McNally & Co.*, 499 F.3d 608 (6th Cir. 2007). In *Drutis*, the court held that plaintiffs lacked standing to bring a claim that their pension plan discriminated on the basis of age in violation of § 1054(b)(1)(H) because they "suffered no injury as a result of the challenged plan." *Id.* at 611. The plaintiffs had the option of choosing either to remain with their current plan or to be subject to a new plan. *Id.* The plaintiffs chose the old plan but sued claiming the new plan violated ERISA and alleged that were the new plan modified to comply with ERISA, they would have chosen the new plan, thus receiving higher benefits. *Id.* The plaintiffs argued that they should be entitled to choose a version of the new plan absent alleged violations. The court held the plaintiffs did not meet the injury-in-fact requirement because their injury was "entirely speculative" and "any harm to

[plaintiffs was] hypothetical at best." *Id.* The court concluded that Article III standing ultimately turns on "whether a plaintiff gets something (other than moral satisfaction) if the plaintiff wins." *Id.* at 612 (emphasis omitted).

Kendall's claim, that she would receive more in benefits were the Offset to be eliminated or the Plan modified to conform to ERISA, is not an injury-in-fact. Her benefits were not reduced by any more than the customary Offset (and a reduced Offset during the period in which Kendall elected to collect under the Rule of 85), which Kendall acknowledges was legal. While it may be true that eliminating the entire Offset would increase the amount each Plan participant receives in benefits, Kendall has no right under ERISA to receive benefits that have not been reduced by a lawful social security offset, and furthermore, Kendall offers no proof that Avon would not adjust the Plan to offset for its employees' social security benefits through some other means. While Avon may not amend the Plan to reduce its employees' benefits, it may amend the plan to keep its employees' net benefits static. And while it is possible that distributing the Offset evenly among all participants could reduce Kendall's Offset, Kendall alleged nothing to support her contention that Avon would decrease the Offset per participant. Likewise, Kendall concedes that her future benefits under a modified Plan that conforms to ERISA are not yet determined. The best Kendall offers the court is a calculation of how a hypothetical Plan participant would be injured by the Rule of 85 provisions of the Plan. Her claim, like the claim in *Drutis*, is speculative and therefore does not constitute an injury-in-fact.[15]

---

[15] Although we need not determine whether Kendall was injured by the provisions of the Plan she challenges because she fails to articulate injuries specific to her, we note that the district court was correct in its assessment of Claims II and III. Kendall could not have suffered a

Kendall does state an identifiable and quantifiable injury in her appeal of Claim VII by arguing that her AFC was not calculated in accordance with ERISA for purposes of Section 1.10(d) of the 1994 Plan, resulting in a reduction of her benefits. Kendall provides mathematical calculations to support her claim, and more importantly, her claim relates to a past and present reduction in accrued benefits. Kendall has standing to bring Claim VII, and related Claims VIII and IX. However, Kendall did not raise this challenge to Section 1.10(d) before the district court and she may not raise it now before this Court.

"Although we may exercise discretion to consider waived arguments where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (internal quotation marks and alterations omitted). Kendall had three years to correct her complaint to allege a violation of Section 1.10 of the Plan while Avon's 12(b)(6) motion was pending before the district court. After the district court dismissed the case, Kendall did not move for relief from judgment under Fed. R. Civ. P. 60(b). On appeal, Kendall did not ask that we remand to give Kendall an opportunity to amend her complaint. She failed to take advantage of any of those opportunities,

cognizable injury as a result of the Offset withholding provision or the Offset termination provision, based on reaching the age of twenty-five or working for fifty years, respectively, because Kendall began work at age thirty and did not work at Avon for fifty years, and therefore she would not have been directly affected by either Plan provision. The only effect these provisions would have on Kendall's benefits is a theoretical reduction in benefits to compensate for the increased benefits to qualifying Plan participants. However, as we noted above, these theoretical and unsupported claims are insufficient to confer constitutional standing on Kendall.

and we will not *sua sponte* allow her to amend her complaint before the district court.[16]

Kendall lacks standing to assert Claims I, II, III, and IV, and although she may have standing to assert her modified Claims VII, VIII, and IX, we will not entertain these claims because Kendall did not allege them, or any specific injury resulting from them, before the district court.

## Conclusion

The district court's order of September 14, 2007, granting Defendants-Appellees' motion to dismiss is hereby AFFIRMED.

---

[16] Finally, Kendall, as a Plan participant who opted to collect early retirement under the Rule of 85, actually benefits from the provision she challenges. Consequently, her interests are not aligned with the class she purports to represent. It is uncertain whether she would "fairly and adequately protect the interests of the class," and therefore whether class certification for Kendall would be appropriate. Fed. R. Civ. P. 23(a).