Landol FLETCHER, Fredrick P. Potter, Jr., and all others similarly situated, Plaintiffs,

v.

CONVERGEX GROUP LLC, Convergex Execution Solutions LLC, Convergex Global Markets Ltd., Convergex Holdings LLC, G–Trade Services LLC, and Does 1–10, Defendants.

13 Civ. 9150 (LLS)

United States District Court, S.D. New York.

Signed February 17, 2016

James A. Bloom, Keller Rohrback P.L.C., Phoenix, AZ, James Brian McTigue, James Moore, McTigue & Veis LLP, Jonathan Gans Axelrod, Beins Axelrod P.C., Washington, DC, David Steven Preminger, Keller Rohrback L.L.P., New York, NY, Derek W. Loeser, Erin M. Riley, Lynn Lincoln Sarko, Margaret E. Wetherald, Thomas David Copley, Keller Rohrback L.L.P., Seattle, WA, for Plaintiffs.

Brian Thomas Ortelere, Jeremy Paul Blumenfeld, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Melissa D. Hill, Morgan, Lewis & Bockius LLP, New York, NY, for Defendants.

1. Defendants also moved to dismiss plaintiff Fredrick Potter's claims for lack of subject-matter jurisdiction or for summary judgment on the merits dismissing Mr. Potter's claims. While the motion was pending, Mr. Potter voluntarily dismissed his claims without prejudice. Accordingly, as it pertains to Mr. Potter's former claims, defendants' motion is dismissed as moot.

2. Mr. Fletcher seeks to represent a class of participants, beneficiaries, and named fiduciaries of other ERISA plans that were also

## MEMORANDUM & ORDER

LOUIS L. STANTON, UNITED STATES DISTRICT JUDGE.

Defendants move to dismiss plaintiff Landol Fletcher's ERISA claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] The motion is granted because Mr. Fletcher lacks constitutional standing to bring his claims.

## BACKGROUND

Defendants are a group of related brokers whose customers include asset managers who manage funds on behalf of ERISA retirement plans, including Mr. Fletcher's retirement plan. Mr. Fletcher claims that, from 2006 to 2011, defendants added unauthorized and undisclosed markups and markdowns to the trades they executed on behalf of their customers. That gave the brokers extra revenue from their customers' trades, and breached their fiduciary duties under ERISA, among other standards.

Mr. Fletcher is a participant in the Central States, Southeast and Southwest Area Pension Plan ("Central States Plan"),[2] an ERISA defined-benefit employee pension plan. His benefits have vested, but he is not presently receiving them because he is still working. After extensive discovery, the evidence shows that defendants booked unauthorized "trading profits" of $1,577.93 on trades for the Central States Plan.

charged undisclosed markups and markdowns by defendants. Because he is not "a participant, beneficiary or fiduciary" (29 U.S.C. § 1132(a)(2)) of any of those plans, those class allegations are also dismissed. See Slaymon v. SLM Corp., 506 Fed.Appx. 61, 65 (2d Cir.2012) (affirming dismissal of class allegations because "Plaintiffs were never participants in the Retirement Plan and lack constitutional standing to bring claims against fiduciaries of that Plan.").

The Central States Plan has significant and long-standing financial difficulties. As of 2012, the plan was only 53.9% funded, an underfunding of more than $16 billion.

During the pendency of this motion, the Central States Plan on October 1, 2015 announced a rescue plan designed to stave off its insolvency. Under the rescue plan, Mr. Fletcher's benefits would be reduced by 28% or $1,035.73 per month. Pursuant to the Multiemployer Pension Reform Act of 2014, Public Law 113–235, div. O, 128 Stat. 2274, several steps remain before the rescue plan is implemented and his (and others') benefits are reduced, including approval by the U.S. Department of Treasury and approval by a majority vote of affected plan participants or a decision by the Treasury Department that (among other things) the suspension of benefits is "systemically important," *i.e.,* its non-implementation would cause payments by the Pension Benefit Guaranty Corporation of over a billion dollars. 26 U.S.C. § 432(e)(9)(H)(v).

## DISCUSSION

■ "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

■ "A plan participant suing under ERISA must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty." *Kendall v. Employees Ret. Plan of Avon Products,* 561 F.3d 112, 118 (2d Cir.2009).

The "irreducible constitutional minimum" of standing requires, *inter alia,* that (1) the plaintiff "have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," and (2) the injury be "fairly trace[able] to the challenged action of the defendant." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (other internal quotation marks and citations omitted). An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant. *See Kendall v. Employees Retirement Plan of Avon Products,* 561 F.3d 112, 119 (2d Cir.2009).

*Taveras v. UBS AG,* 612 Fed.Appx. 27, 29 (2d Cir.2015) (alteration in *Taveras*).

For constitutional standing, there are three components of "cases" and "controversies" subject to United States' judicial power (U.S. Const. art. III, § 2):

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (footnote, citations, internal quotation marks, ellipsis, and brackets omitted).

Mr. Fletcher makes several arguments that he has constitutional standing. First,

he argues that defendants' scheme diminished the Central States Plan's assets and increased the risk that he will not receive his promised benefits or that the reduction in his benefits will be greater than it would have otherwise been.

"The Supreme Court has held that a participant in a defined benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund." *David v. Alphin,* 704 F.3d 327, 338 (4th Cir.2013) (citing *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 439–40, 119 S.Ct. 755, 761, 142 L.Ed.2d 881 (1999) (explaining the "difference between defined contribution plans and defined benefit plans," and the rights of each's beneficiaries)). Fiduciary misconduct "will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 255, 128 S.Ct. 1020, 1025, 169 L.Ed.2d 847 (2008).

█ Here, it seems that defendants misappropriated $1,577.93 from a pension plan which, as of 2012, was underfunded by more than $16 billion. Defendants' overcharges increased the plan's deficiency by less than one hundred-thousandth of one percent. The extent to which that enhanced the plan's existing prospect of default is so minute as to be imaginary and inconsequential rather than "an injury in fact" and "actual or imminent" as required for constitutional standing. *Lujan, supra.*

Second, Mr. Fletcher argues that the reduction in his own benefits under the Central States' rescue plan establishes his constitutional standing. That might be so, but the reduction is not attributable to defendants' overcharges, but to the plan's long-running and multi-billion-dollar underfunding. The $1,577.93 misappropriated by defendants, spread across 400,000 plan participants, is less than four-tenths of a cent.

Finally, the Second Circuit has firmly rejected Mr. Fletcher's argument that defendants' violation of their statutory duties under ERISA is in and of itself an injury in fact to Mr. Fletcher:

> While plan fiduciaries have a statutory duty to comply with ERISA under [29 U.S.C.] § 1104(a)(1)(D), Kendall must allege some injury or deprivation of a specific right that arose from a violation of that duty in order to meet the injury-in-fact requirement. *See FIRF [v. Office of Thrift Supervision* ], 964 F.2d [142] at 147 (1992). Kendall cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing.

*Kendall,* 561 F.3d at 121.

Accordingly, Mr. Fletcher has not established constitutional standing to sue for the incremental loss he, as a plan participant, suffered from defendants' overcharges to the plan. It is simply unrecognizably small, as are the overcharges' enhancement of the prospect of default already independently posed by the plan's multi-billion-dollar underfunding.

## CONCLUSION

Defendants' motion to dismiss the amended complaint as to plaintiff Landol Fletcher for lack of subject-matter jurisdiction (Dkt. No. 29) is granted. As Mr. Fletcher is the sole remaining plaintiff, the Clerk shall enter judgment accordingly, dismissing the amended complaint with costs and disbursements according to law.

So ordered.