*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand twenty-four.

PRESENT:
> GERARD E. LYNCH,
> MICHAEL H. PARK,
> STEVEN J. MENASHI
> *Circuit Judges.*

_____

APP Group (Canada) Inc., DBA Mackage,
A.P.P. Group Inc., DBA Mackage,

> *Plaintiffs-Appellants*,

v.                                                    22-1965

Rudsak USA Inc.,

> *Defendant-Appellee.*

_____

FOR PLAINTIFFS-APPELLANTS:           GLEN LENIHAM (Darren Oved and Aaron Solomon, *on the brief*), Oved & Oved LLP, New York, NY.

FOR DEFENDANT-APPELLEE:           DAVID DONAHUE (Jason D. Jones and Shelby P. Rokito, *on the brief*), Fross Zelnick Lehrman & Zissu, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART, VACATED IN PART, AND REMANDED** for further proceedings.

APP Group (Canada) Inc. and A.P.P. Group Inc. (collectively "Mackage"), owners of the fashion label Mackage, bring claims for trade dress infringement, trade dress dilution, and common law unfair competition against Rudsak USA Inc. ("Rudsak"). Mackage alleges that Rudsak produces and sells knock-off coats featuring Mackage's designs and engages in wrongful and willful misappropriation of proprietary information to produce and sell the knock-offs. Mackage argues that the district court erred both in dismissing its claims for failure to state a claim and in denying leave to amend its Complaint. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). "We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

**I.     Trade Dress Infringement**

Mackage argues that it stated a claim for trade dress infringement. "To plead a claim of trade dress infringement involving the overall appearance of a product, a plaintiff must offer (1) a precise expression of the character and scope of the claimed trade dress," and "must also allege

that (2) the claimed trade dress is non-functional; (3) the claimed trade dress has secondary meaning; and (4) there is a likelihood of confusion between the plaintiff's goods and the defendant's." *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 46 (2d Cir. 2018) (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) and *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115-16 (2d Cir. 2001)). We address the first three elements of Mackage's trade dress infringement claim; the fourth is not in dispute.

A.     Precise Description

Mackage alleges that it adequately describes its trade dress in its Complaint, enumerating the design elements and supplementing them with photographs. To allege "a precise expression of the character and scope of the claimed trade dress," Mackage must "be able to point to the elements and features that distinguish its trade dress," *Yurman Design*, 262 F.3d at 117, and explain "how they are distinctive," *Eliya*, 749 F. App'x at 47. These requirements allow courts to "shape narrowly-tailored relief" with knowledge of "what distinctive combination of ingredients deserves protection"; otherwise, "a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Landscape Forms*, 113 F.3d at 381.

Mackage provides the following description in its Complaint:

The Mackage products, in particular the Mackage coats and jackets, incorporate non-functional product trade dress constituting a combination of distinctive features that identify the goods as originating from Mackage, including: (i) the signature v-shaped fur-collar/hood used on the many of its best-selling coats (the "V-Shaped Collar"); and/or (ii) the asymmetrical zipper used to close several of its

3

coats (the "Asymmetrical Zipper") (the V-Shaped Collar and Asymmetrical Zipper as referred to individually and collectively as the "Trade Dress").

A-8 to -9. The district court held that this description does not sufficiently specify features or elements of the trade dress. *Cf. GeigTech East Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 277 (S.D.N.Y. 2018) (providing a precise description by detailing each individual element of the trade dress and showing how its trade dress is distinctive); *Eliya, Inc.*, 749 F. App'x at 45 (same). Central to this holding was the language of Mackage's Complaint identifying the trade dress as including the V-Shaped Collar "*and/or*" the Asymmetrical Zipper. A-9. The ambiguity of this language caused the Complaint's description to "denote categories of features, not the features themselves," signaling that these features are "overbroad and unprotectible." *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 1:20-cv-07899-PAC, 2021 WL 1758881, at *4 (S.D.N.Y. May 4, 2021). Mackage's inclusion of photographs does not salvage the insufficient description because pictures are not a substitute for a precise description. *See Int'l Leisure Prods., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018) ("[A] visual representation of the asserted trade dress does not excuse 'the party seeking protection' from its burden of 'point[ing] to the elements and features that *distinguish* its trade dress.") (citing *Yurman Design*, 262 F.3d at 117).

Mackage now describes its trade dress as "the *combination* of (i) Mackage's unique, signature V-shaped fur-collar/hood; *and (ii) two (2)* asymmetrical zippers." Appellants' Br. at 2 (emphasis added). But these changes alter the nature of the trade dress, so we do not consider the new description on appeal. *See Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141-42 (2d Cir. 2012) ("[Plaintiff] seeks to introduce facts that were not part of his complaint . . . . Under the

circumstances, 'we see no reason to allow [him] to effectively amend [his] complaint on appeal.'" (quoting *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 117 (2d Cir. 2009)).

B.     Functionality

Only non-functional trade dress is eligible for trademark protection.    There are two types of functionality—utilitarian and aesthetic.   Utilitarian functionality turns on whether a product feature is "(1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012) (internal quotations marks omitted).    Aesthetic functionality depends on whether "trademark protection would significantly hinder competition by limiting the range of adequate alternative designs."   *Id*. at 222.   Mackage argues that its trade dress is non-functional because it does not have any utility and because alternative designs perform the same function.

The district court did not err in finding that Mackage failed to allege non-functionality. Throughout its Complaint, Mackage makes only conclusory statements asserting that its trade dress is non-functional because "it does not have any utility" and offers photos as its only support. But the Complaint does not identify which aspects of the photos are evidence of non-functionality. Although Mackage offers some arguments on appeal suggesting that the V-Shaped Collar and Asymmetrical Zipper have no utilitarian functionality, we again do not consider facts not pleaded in the Complaint.   *See Robinson*, 495 F. App'x at 141-42.

C.     Secondary Meaning

Mackage claims that its trade dress acquired secondary meaning because it satisfies all the elements relevant to secondary meaning.   A claimed trade dress has secondary meaning when "in the minds of the public, the primary significance of a product feature . . . is to identify the source

5

of the product rather than the product itself." *Christian Louboutin*, 696 F.3d at 216. "The crucial question in a case involving secondary meaning always is whether the public is moved in any degree to buy an article because of its source." *Id*. at 226. Relevant factors include "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Id*. (internal quotation marks omitted).

The district court correctly held that Mackage's Complaint did not plausibly allege secondary meaning. Mackage concedes that it does not allege facts as to the first two factors—advertising expenditures and consumer surveys. As to the fourth factor, the vague statement that "Mackage's Trade Dress is used on a significant portion of its core collection and represents its best-selling styles year after year," A-10, is insufficient to show sales success. *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 344 (E.D.N.Y. 2014) (concluding plaintiffs' blanket assertion of sales and marketing success without any details fails to support secondary meaning). As to the fifth factor, Mackage's allegations of attempts to plagiarize its trade dress are comprised of only a conclusory reiteration of its trade dress infringement claim and so are "not entitled to be assumed true." *Vedder Software Grp. Ltd. v. Ins. Servs. Off., Inc.*, 545 F. App'x 30, 33 (2d Cir. 2013). Weighing these factors, we conclude that the district court did not err in concluding that, on balance, Mackage's Complaint did not sufficiently allege that its trade dress had acquired secondary meaning.

In summary, the district court did not err by dismissing the trade dress infringement claim based on Mackage's failure to provide a precise description of its trade dress or to allege the elements of non-functionality and acquired secondary meaning in its Complaint.

6

## II. Trade Dress Dilution

Mackage alleges that its trade dress is famous and well-recognized by the general consuming public. Mackage also alleges that its trade dress is distinctive and has acquired secondary meaning. Under the Lanham Act, "an owner of a famous, distinctive mark is entitled to an injunction against the user of a mark that is likely to cause dilution of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c). Under New York state law, a party alleging trade dress dilution "must prove (1) that the trademark is truly distinctive or has acquired secondary meaning; (2) a likelihood of dilution either as a result of blurring or tarnishing; and (3) predatory intent." *Paco Sport, Ltd. v. Paco Rabanne Perfumes*, No. 00-7344, 2000 WL 1721126, at *7 (2d Cir. Nov. 16, 2000)). Failure to state a claim that plaintiff has a protectable trade dress is a failure to state a claim of dilution under federal and state law. *Int'l Leisure Prods.*, 747 F. App'x at 26.

Because Mackage's Complaint failed to state a claim for trade dress infringement, it also fails to allege trade dress dilution under federal and state law. We thus affirm the district court's order dismissing Mackage's trade dress dilution claim.

## III. Unfair Competition Under New York Common Law

Mackage argues that its "Complaint alleges a viable common law unfair competition claim that is not premised solely on [Rudsak's] infringement of Mackage's Trade Dress, but rather independently arose from [Rudsak's] unlawful and deceptive trade practices in the manufacture and sale of the Unfairly-Competing Coats that did not incorporate the Trade Dress," which include

7

misappropriation of "Mackage's labor, skill, expenditures, and goodwill—as well as Mackage's Proprietary Information." Appellants' Br. at 29, 31. "A common law unfair competition claim under New York law is generally 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Crye Precision LLC v. Duro Textiles, LLC*, 689 F. App'x 104, 108 (2d Cir. 2017); *see Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) (same).

The district court dismissed Mackage's claim for unfair competition under New York common law on the ground that the claim was based solely on the same trade dress theory as its federal claim, so it failed for the same reason as did that claim. In the Complaint, however, Mackage alleged that Rudsak misappropriates its proprietary information by "deliberately" hiring former Mackage employees and utilizing them to "copy Mackage's style nearly verbatim (*including the Trade Dress*) (the 'Defendant's Offending Coats')" and by purchasing Mackage coats and instructing employees to copy them. A-19 to -20 (emphasis added). In support of this claim, Mackage included images of the "Offending Coats," some of which do not include both alleged trade dress elements (the V-Collar and the Asymmetrical Zipper) and some of which include neither. A-21 to -26. The District Court failed to address the unfair competition claim to the extent that it was predicated on misappropriation of proprietary interests other than the trade dress.

We thus remand to permit the district court to decide in the first instance whether Mackage has sufficiently pleaded factual allegations to state a claim for unfair competition based on the misappropriation of proprietary information.

## IV. Leave To Amend

Finally, Mackage argues that the district court erred by declining to grant an opportunity to amend its complaint. We agree. As we have written:

> Federal Rule of Civil Procedure 15(a)(2) states that court[s] should freely give leave [to amend] when justice so requires. We have upheld Rule 15(a)(2)'s liberal standard as consistent with our strong preference for resolving disputes on the merits. We have been particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue, reasoning that [w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies. However, denial of leave to amend is proper if amendment would be futile. In particular, [a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint.

*Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (citations and internal quotation marks omitted).

Mackage was not provided an opportunity to amend deficiencies that it claims it could fix. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (finding it improper to provide plaintiffs with "a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead"); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (holding that the district court erred in denying leave to amend when it "granted the defendant's motion to dismiss, identif[ied] the flaws it found in [plaintiff's] complaint, and denied [plaintiff] leave to replead, faulting him for having failed to submit a proposed amended complaint in the time between the defendant's motion to dismiss and the court's ruling on it."). Here, in a footnote, the district court concluded that amendment would be futile "because all of Mackage's claims are predicated on a protectable trade dress" which

9

Mackage has been unable to describe. *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-CV-7712, 2022 WL 3227861, at \*7 n.13 (S.D.N.Y. Aug. 10, 2023).

Mackage specifies in its reply brief how it could amend its Complaint and cure various deficiencies. It explains how it could: clarify its description of the trade dress and how the trade dress is distinctive; specify its allegations of non-functionality; add to the elements of secondary meaning; and clarify the basis for the state-law claim for unfair competition. Although we do not address whether such amendments would be sufficient, they are not clearly futile, so we vacate the district court's denial of leave to amend.[1]

\*     \*     \*

We have considered all of Mackage's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court dismissing Mackage's trade dress infringement and trade dress dilution claims. We **VACATE** the district court's dismissal of Mackage's unfair competition claim and denial of leave to amend and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] We accordingly deny Rudsak's motion to strike a portion of Mackage's reply brief. Mackage's proposed amendments are not new issues raised for the first time in a reply brief, rather they are a response to an argument made by Rudsak on existing issues. *See United States v. Bari*, 599 F.3d 176, 180 n.6 (2d Cir. 2010) ("We note that although we normally will not consider *issues* raised only in reply briefs, we will consider *arguments* raised in response to arguments made in appellee's brief.").