**14-3993-cv**
*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2015

ARGUED: SEPTEMBER 21, 2015
DECIDED: MAY 13, 2016

No. 14-3993-cv

AMERICAN PSYCHIATRIC ASSOCIATION, on behalf of its members and
their patients, et al.
*Plaintiffs-Appellants,*


*v.*


ANTHEM HEALTH PLANS, INC., et al.
*Defendants-Appellees.*

————

Appeal from the United States District Court
for the District of Connecticut.
No. 3:13 Civ. 494 – Janet Bond Arterton, *Judge*

————

Before: WALKER and RAGGI,[1] *Circuit Judges.*

————

---

[1] The Honorable Robert D. Sack is recused in this case, and therefore the case is decided by the remaining two members of the panel, who are in agreement. *See* Second Circuit Internal Operating Procedure E(b).

Plaintiffs-Appellants are two individual psychiatrists, Susan Savulak, M.D., and Theodore Zanker, M.D. ("the psychiatrists"), and three professional associations of psychiatrists, the American Psychiatric Association, the Connecticut Psychiatric Society, Inc., and the Connecticut Council of Child and Adolescent Psychiatry (collectively, "the associations"). They brought suit in the United States District Court for the District of Connecticut against Defendants-Appellees, four health-insurance companies: Anthem Health Plans, Inc. (doing business as Anthem Blue Cross & Blue Shield of Connecticut); Anthem Insurance Companies, Inc. (doing business as Anthem Blue Cross and Blue Shield); Wellpoint, Inc.; and Wellpoint Companies, Inc. (collectively, "the health insurers"). The psychiatrists and the associations allege that the health insurers' reimbursement practices discriminate against patients with mental health and substance use disorders in violation of the Mental Health Parity and Addition Equity Act of 2008 ("MHPAEA"), Pub. L. No. 110-343, Div. C §§ 511-12, 122 Stat. 3861, 3881, codified at 29 U.S.C. § 1185(a), and the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001-1461.  The associations brought suit on behalf of their members and their members' patients, while the psychiatrists brought suit on behalf of themselves and their patients. The district court dismissed the case after concluding that the psychiatrists lacked a cause of action under the statute and the associations lacked constitutional standing to pursue their respective claims.  We AFFIRM.

————

AARON M. PANNER (Matthew A. Seligman, *on the brief*), Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., *for Plaintiffs-Appellants.*

PETER R. BISIO (Jessica L. Ellsworth, Erica K. Songer, Sean Marotta, *on the brief*), Hogan Lovells US LLP, Washington, D.C., *for Defendants-Appellees.*

D. Brian Hufford and Jason S. Cowart, Zuckerman Spaeder LLP, New York, N.Y., and David A. Reiser, Washington, D.C., *for Amici Curiae American Medical Association and Connecticut State Medical Society in support of Plaintiffs-Appellants.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiffs-Appellants are two individual psychiatrists, Susan Savulak, M.D., and Theodore Zanker, M.D. ("the psychiatrists"), and three professional associations of psychiatrists, the American Psychiatric Association, the Connecticut Psychiatric Society, Inc., and the Connecticut Council of Child and Adolescent Psychiatry (collectively, "the associations"). They brought suit in the United States District Court for the District of Connecticut against Defendants-Appellees, four health-insurance companies: Anthem Health Plans, Inc. (doing business as Anthem Blue Cross & Blue Shield of Connecticut); Anthem Insurance Companies, Inc. (doing business as Anthem Blue Cross and Blue Shield); Wellpoint, Inc.; and Wellpoint Companies, Inc. (collectively, "the health insurers"). The psychiatrists and the associations allege that the health insurers' reimbursement practices discriminate against patients with mental health and substance use disorders in violation of the Mental Health Parity and Addition Equity Act of 2008 ("MHPAEA"), Pub. L. No. 110-343, Div. C §§ 511-12, 122 Stat. 3861, 3881, codified at 29 U.S.C. § 1185(a), and the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001-1461.  The associations brought suit on behalf of their members and their members' patients, while the psychiatrists brought suit on behalf of themselves and their patients. The district court dismissed the case after concluding that the psychiatrists lacked a cause of action under the statute and the associations lacked constitutional standing to pursue their respective claims.  We AFFIRM.

## BACKGROUND

The psychiatrists and the associations allege that the health insurers discriminate against patients with mental health and substance use disorders by systemically reimbursing providers of services to treat these disorders at a less favorable rate than for other healthcare services.  They argue that this less favorable reimbursement policy prevents many psychiatrists from accepting health insurance.  The policy limits patients' access to necessary services and frequently forces them to change providers.  Plaintiffs allege that this practice discriminates against patients with mental

health and substance use disorders in violation of the MHPAEA and ERISA.

Congress enacted the MHPAEA to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans. *See Coalition for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). The MHPAEA expanded the scope of prior legislation, the Mental Health Parity Act of 1996, Pub. L. No. 104–204, §§ 701–02, 110 Stat. 2874, 2944.

Under the MHPAEA, if a covered insurer's "plan or coverage" does not include aggregate lifetime limits "on substantially all medical and surgical benefits, the plan or coverage may not impose any aggregate lifetime limit on mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(1)(A). The same is true with respect to annual limits. *Id.* § 1185a(a)(2)(A). Additionally, if an insurer "provides both medical and surgical benefits and mental health or substance use disorder benefits," the insurer must ensure

that both "the financial requirements" and "the treatment limitations" applicable to mental health and substance use disorder benefits "are no more restrictive" than the predominant financial requirements and treatment limitations that apply to medical and surgical benefits. *Id.* § 1185(a)(3)(A).

Insurers are forbidden, for example, from having either "separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits," § 1185(a)(3)(A)(i), or "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits," *id.* § 1185(a)(3)(A)(ii); *see also* 26 U.S.C. § 9812(a)(3) (parallel provisions in Internal Revenue Code); 42 U.S.C. § 300gg-5(a) ("A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law.").

The psychiatrists and the associations, on behalf of their various patients and members (and in the case of Dr. Savulak, as assignee of two of her patients), allege that the health insurers' conduct violates the foregoing anti-discrimination provisions of the MHPAEA and breaches the insurers' fiduciary duties under § 502(a)(3) of ERISA. The psychiatrists and the associations also allege state-law claims for breach of contract and tortious interference with contract. The complaint seeks a declaration of the health insurers' obligations under the MHPAEA; an order enjoining the health insurers from continuing to discriminate against individuals with mental health and substance use disorders; and damages related to the state-law claims.

The district court (Janet Bond Arterton, *J.*) dismissed the action. The district court concluded that the psychiatrists lack third-party "statutory standing" to bring claims on behalf of their patients. The district court also rejected Dr. Savulak's distinct assignee-based theory of a cause of action. The district court assumed without deciding that the assignments of ERISA claims made by two patients

to Dr. Savulak were not precluded by the anti-assignment provisions of their plans. But the district court concluded that the assignment conveyed legal rights only, and moreover that the complaint did not plead any facts suggesting that the assignment was in exchange for medical treatment, as required for a provider to have a cause of action under ERISA. More generally, the district court held that the physician-patient relationship does not grant third-party standing in this case because the psychiatrists asserted no constitutional claims on behalf of their patients and because the statutes at issue did not broadly confer a private right of action upon providers. Finally, the district court found that the associations lacked constitutional standing because their individual members lacked standing.

Although the district court concluded that the psychiatrists and the associations lacked standing, it went on to address the health insurers' argument that the psychiatrists and the associations had failed to state a claim.

The district court first rejected the psychiatrists' and the associations' contention that the health insurers were acting as fiduciaries "with respect to a plan" under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).[2] The district court determined that the health insurers' setting of system-wide reimbursement rates and polices regarding the extent of coverage was a business decision that— unlike discretionary determinations about an individual claimant's eligibility for benefits—does not constitute a fiduciary act under ERISA. The court also held that even if the insurers were acting as fiduciaries, ERISA § 502(a)(1)(B) provides adequate relief, thus requiring dismissal of the ERISA § 501(a)(3) claims.

---

[2] ERISA provides that "a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Variety Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)). A plan administrator "engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Id.* at 511. "[G]eneral fiduciary duties under ERISA [are] not triggered," however, when the decision at issue is, "at its core, a corporate business decision, and not one of a plan administrator." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001).

The district court accordingly dismissed plaintiffs' federal claims and declined to exercise supplemental jurisdiction over their state claims.  Plaintiffs appeal.  Because we agree that plaintiffs lack standing, it is unnecessary for us to address the district court's determination that the complaint failed to state a claim.

**DISCUSSION**

We review de novo the district court's determination on standing. *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008).  "Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Id*. (internal quotation marks omitted).

## I.  The psychiatrists lack standing.

We reject the psychiatrists' argument that they have standing to assert their ERISA § 502(a)(3) claims as third parties bringing suit on behalf of their patients.  As we shall explain, this argument conflates the prudential third-party standing doctrine with the

requirement that the plaintiff have a cause of action under the statute—a requirement formerly known as "statutory standing."

We begin by briefly noting the parameters of constitutional standing, prudential standing, and what was formerly known as "statutory standing," the differences between them, and their relationships to one another.

Constitutional standing refers to the requirement that parties suing in federal court establish that a "Case" or "Controversy" exists within the meaning of Article III of the United States Constitution. Constitutional standing requires (1) that the plaintiff have suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted).

Unlike the "immutable requirements of Article III," the "prudential principles that bear on the question of standing" are "judicially self-imposed limits on the exercise of federal jurisdiction," and may be altered. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal quotation marks omitted). They are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Prudential principles are "closely related to Art. III concerns but essentially matters of judicial self-governance." *Id*. at 500. Unlike the requisites of constitutional standing, prudential limits "can be modified or abrogated by Congress." *Bennett*, 520 U.S. at 162. One prudential limit on standing is the principle "that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant [the] exercise of jurisdiction." *Warth*, 422 U.S. at 499. Another prudential principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties. *Id.*; *see also Singleton v. Wulff*, 428 U.S. 106, 113 (1976).

This rule against third-party standing is not absolute. For example, a plaintiff may assert the legal rights of another as a "next friend" when he or she establishes: "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff*, 549 F.3d at 109 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). Similarly, a physician or other professional may raise the *constitutional* rights, but generally not the statutory rights, of his or her patients. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 480-81 (1965) (holding that licensed physician and non-physician director of family-planning group had standing to raise the constitutional rights of people "with whom they had a professional relationship" in challenging state law against prescribing contraceptives); *Eisenstadt v. Baird*, 405 U.S. 438, 443-46 (1972) (holding that distributor of contraceptives and advocate for right to contraceptives had standing to challenge law impairing ability to obtain contraceptives, even though "he was neither a doctor nor a druggist"). Plaintiffs here raise only statutory claims.

Finally, a plaintiff must have a cause of action under the applicable statute. This was formerly called "statutory standing." In the past, we suggested that this was either "a separate aspect of standing or a part of the prudential aspect of standing." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 n.12 (2d Cir. 2003); *see also Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009). The Supreme Court has recently clarified, however, that what has been called "statutory standing" in fact is not a standing issue, but simply a question of whether the particular plaintiff "has a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014). This inquiry "does not belong" to the family of standing inquiries, *id.*, because "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case." *Id.* at 1386 n.4 (emphasis in original) (internal quotation marks omitted); *see also Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 365 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional.").

Because the Supreme Court made clear in *Lexmark* that the "statutory standing" appellation is "misleading" and "a misnomer," 134 S. Ct. at 1386, 1387 & n.4 (internal quotation marks omitted), we avoid this appellation going forward. *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1273 (11th Cir. 2015) (noting that *Lexmark* signaled that "the longstanding doctrinal label of 'statutory standing' . . . is misleading"); *see also Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 n.3 (3d Cir. 2015) (similar).

Turning to this case, we now address each of these concepts in turn. *See Kendall*, 561 F.3d at 118 (in order to have standing under ERISA, a plaintiff must both "assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty" *and* "identify a statutory endorsement of the action").

The health insurers do not contest that the psychiatrists have constitutional standing, and we agree with the district court that the psychiatrists' personal financial stakes in the suit (as a result of "dramatically reduced" reimbursement rates) meet the

constitutional requirements of injury in fact, causation, and redressability. *Lujan*, 504 U.S. at 560-61.

Moreover, although the plaintiffs argue that they have "prudential standing," this argument cannot prevail in the absence of a cause of action under the ERISA. The district court concluded as much. Notwithstanding its reference to prudential limitations on standing, the district court ultimately concluded that plaintiffs lacked "statutory standing," i.e., a cause of action under the statute. The parties make reference to prudential limitations on standing in their briefs mostly in the context of addressing whether plaintiffs have a cause of action under the statute. As we shall explain, this unnecessarily confuses the issue. Because Congress specified in the statute who may sue, prudential standing principles do not apply.

We turn now to the core issue in this appeal: whether plaintiffs have a cause of action under ERISA against the health insurers arising from the health insurers' alleged MHPAEA violations. We consider whether, applying the "traditional principles of statutory interpretation," the plaintiffs here fall "within

the class of plaintiffs whom Congress has authorized to sue."

*Lexmark*, 134 S. Ct. at 1387-88.  We agree with the district court that

they do not.

Section 502(a)(3) unambiguously provides that a civil action

under ERISA may be brought "by a participant, beneficiary, or

fiduciary."  29 U.S.C. § 1132(a)(3).  The psychiatrists do not argue

that they are participants, beneficiaries, or fiduciaries under ERISA,

nor could they.  Indeed, the psychiatrists' arguments are aimed at

circumventing this hurdle.  Because "[c]ourts have consistently read

[this provision] as strictly limiting 'the universe of plaintiffs who

may bring certain civil actions,'" the psychiatrists lack a cause of

action under § 502(a)(3).  *Connecticut v. Physicians Health Servs. of*

*Conn.*, 287 F.3d 110, 121 (2d Cir. 2002) (quoting *Harris Trust & Savs.*

*Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000)); s*ee also*

*Franchise Tax Bd. of the State of Calif. v. Constr. Laborers Vacation Tr.*,

463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties

entitled to seek relief under [§ 502(a)(3)]; it does not provide anyone

other than participants, beneficiaries, or fiduciaries with an express cause of action . . . .").

The psychiatrists, as well as the American Medical Association and Connecticut State Medical Society as *amici curiae*, argue in substance that, in accordance with prudential principles, the psychiatrists may stand in the shoes of their patients and thus they have their patients' cause of action under the statute. *Amici* note that mental healthcare providers have a close relationship with their patients, and that stigma and disability often hinder the ability of patients to protect their own interests.

We acknowledge that policy reasons might support allowing physicians to bring suit on behalf of patients with mental health and substance use disorders in the absence of statutory authorization for such an action. But in *Lexmark*, the Supreme Court distinguished the "'prudential' branch of standing"—which includes the doctrine of third-party standing as an exception to "the general prohibition on a litigant's raising another person's legal rights"—from the requirement that the plaintiff be part of the "particular class of

persons" to whom Congress has given "a right to sue under this substantive statute." 134 S. Ct. at 1386-87 (internal quotation marks omitted). "We do not ask whether in our judgment Congress *should* have authorized [plaintiffs'] suit, but whether Congress in fact did so." *Id*. at 1388 (emphasis in original). We may neither "apply [our] independent policy judgment to recognize a cause of action that Congress has denied" nor "limit a cause of action that Congress has created merely because 'prudence' dictates." *Id*. In sum, *Lexmark* teaches that we cannot expand the congressionally-created statutory list of those who may bring a cause of action by importing third-party prudential considerations. The psychiatrists here lack a cause of action under ERISA's § 502(a)(3), irrespective of whether they may stand in the shoes of their patients in other matters. *See Physicians Health Servs.*, 287 F.3d at 120.

Neither *New York State Psychiatric Association, Inc. v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015) ("*NYSPA*"), nor *Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F.3d 278 (3d Cir. 2002), both cited by plaintiffs, are to the

contrary. In *NYSPA*, there was "no serious dispute" that the members of the plaintiff association had "standing to sue [the defendant] in their own right," both as assignees of ERISA benefits and to prevent interference with their provision of mental healthcare. 798 F.3d at 131. By contrast, the plaintiffs here—with an exception, discussed below—claim a cause of action under the statute on behalf of their respective members and patients, rather than on their own behalf.

Likewise, *Pennsylvania Psychiatric Society* does not stand for the proposition that third-party standing can substitute for a statutorily-specified plaintiff's cause of action under the statute. The district court in that case examined third-party standing stemming from state-law contract and tort claims rather than from ERISA. 280 F.3d at 282. The Third Circuit never expressly addressed the question of whether the plaintiffs had a cause of action under the statute. *Pennsylvania Psychiatric* therefore provides little support for the psychiatrists' position in this purely statutory case.

In sum, because the psychiatrists are not among those expressly authorized to sue, they lack a cause of action under ERISA.  Therefore, the district court correctly dismissed the case irrespective of prudential considerations.

Separately, Dr. Savulak argues that she has a cause of action under the statute for another reason: she holds an assignment of claims from two of her patients.  The district court assumed, without deciding, that the assignments were valid.

Dr. Savuluk's argument fails.  Our precedent makes clear that, for purposes of conferring an ERISA cause of action upon a provider, an assignment to a provider must be made in exchange for consideration, in the form of the provision of healthcare services.  Such consideration is lacking in this case.

Like most of our sister circuits, we have allowed physicians to bring claims under § 502(a) based on a valid assignment from a patient.  *See, e.g., I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Eng'rs Council Ins. Tr. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("[T]he assignees of beneficiaries to an ERISA-governed insurance

plan have standing to sue under ERISA."); *see also Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003) (collecting cases from other circuits on derivative standing in general).

However, "[t]his narrow exception grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care benefits." *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001); *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329 (2d Cir. 2011) (holding that the "exception to the [ordinary] ERISA standing requirements" for "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care" is "narrow" (internal quotation marks omitted)).[3]

Therefore, simply asserting that claims under ERISA § 502(a)(3) for violations of MHPAEA have been assigned by the patients to Dr. Savulak is insufficient by itself to give Dr. Savulak a cause of action under the statute. Rather, to obtain standing, the patients' assignment of the right to sue for benefits must be

---

[3] Other circuits have applied the same limitation. *E.g., Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014); *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 403 (3d Cir. 2004); *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997).

exchanged for healthcare benefits.[4]   Therefore, Dr. Savulak lacks standing.

### II.  The association plaintiffs lack standing.

We also agree with the district court that the association plaintiffs lack constitutional standing under Article III because their members, as we have shown, lack standing.  *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (holding that when an association sues on behalf of its members, it must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

---

[4] In *Physicians Health Services*, we noted that "[w]e have never decided whether a state may obtain standing as an assignee of a plan participant under § 1132 generally or whether different rules of standing apply under § 1132(a)(3) than under § 1132(a)(1)(B)."  287 F.3d at 115 n.4.  Because we concluded in *Physicians Health Services* that the State in that case lacked Article III standing, we did not "reach the question of whether, as a matter of statutory construction, a State could ever obtain standing as an assignee under § 1132(a)(3)."  *Id*.  Our decision today does not purport to address the issue left open in *Physicians Health Services*.

While the associations' members could assert their own Article III injuries related to the restrictions imposed on their ability to provide care, as *amici* note, none are plaintiffs and the complaint here does not sufficiently plead facts to show that its members have a cause of action under § 502(a)(3).

**CONCLUSION**

For the reasons stated above, we find that the plaintiff psychiatrists lack a cause of action under the statute, and the association plaintiffs lack constitutional standing to pursue their respective ERISA and MHPAEA claims. We therefore AFFIRM the judgment of the district court.