**24-2339-cv**
*Collins v. Ne. Grocery, LLC*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2024

ARGUED: MARCH 10, 2025
DECIDED: AUGUST 18, 2025

No. 24-2339-cv

GAIL COLLINS, DEAN DEVITO, MICHAEL LAMOUREUX, SCOTT LOBDELL,
*individually, on behalf of the Northeast Grocery, Inc. 401(k) Savings Plan
and on behalf of all similarly situated participants and beneficiaries of the
Plan*,
*Plaintiffs-Appellants*,

*v.*

NORTHEAST GROCERY, INC., THE ADMINISTRATIVE COMMITTEE OF THE
NORTHEAST GROCERY, INC. 401(K) SAVINGS PLAN, JOHN AND JANE
DOES 1-30, *in their capacities as Members of the Administrative
Committee*,
*Defendants-Appellees*.[*]

————

——————————

[*] The Clerk of Court is respectfully directed to amend the caption as set
forth above.

Appeal from the United States District Court
for the Northern District of New York.

————

Before:  WALKER, WESLEY, and BIANCO, *Circuit Judges*.

————

Former grocery store employees who are participants in an employer-sponsored defined contribution retirement benefit plan brought a putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, on behalf of the Northeast Grocery 401(k) Plan (the "Plan") and similarly situated Plan participants, against various fiduciaries of the Plan.  The district court (Hurd, *J.*) dismissed for lack of Article III standing aspects of Plaintiffs' claims that the Plan mismanaged workers' retirement savings by failing to follow a prudent process for administering the Plan and by failing to act in the exclusive interest of Plan participants.

In this opinion we address Plaintiffs' challenge to the district court's dismissal of their claims for lack of standing.  We address the district court's dismissal of Plaintiffs' remaining claims for failure to state a claim and its denial of leave to amend in a summary order issued simultaneously with this opinion.

Participants in a defined contribution benefit plan governed by ERISA must plausibly plead a constitutionally-cognizable individual injury to establish that they have Article III standing to obtain monetary relief for alleged ERISA violations.  We agree with the district court that Plaintiffs here lack Article III standing because they did not allege that they suffered any financial loss affecting their individual retirement accounts arising from Defendants' allegedly imprudent share class selection and failure to investigate the

availability of alternative funds, or from Defendants' alleged breach of fiduciary duty in providing indirect compensation to the Plan's recordkeeper. Plaintiffs had not directed their retirement contributions into the allegedly imprudently or disloyally managed investment options and thus did not allege any individual injury arising from Defendants' management of those options. Moreover, because Plaintiffs did not plausibly allege that they personally suffered any injury, they also lack class standing to assert their share-class claim, alternative fund claim, and indirect compensation claims on behalf of the class.

For the reasons set forth below and in the summary order, we AFFIRM IN PART and VACATE IN PART the judgment of the district court and remand for further proceedings consistent with this opinion and the summary order.

_____

PAUL J. SHARMAN, The Sharman Law Firm LLC, Alpharetta, Georgia, *for Plaintiffs-Appellants*.

ERIKA N. D. STANAT, Harter Secrest & Emery LLP, Rochester, New York (Michael-Anthony Jaoude, Harter Secrest & Emery LLP, Buffalo, New York, *on the brief*), *for Defendants-Appellees*.

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Former grocery store employees who are participants in an employer-sponsored defined contribution retirement benefit plan brought a putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, on behalf of the Northeast Grocery 401(k) Plan (the "Plan") and

similarly situated Plan participants, against various fiduciaries of the Plan. The district court (Hurd, *J.*) dismissed for lack of Article III standing aspects of Plaintiffs' claims that the Plan mismanaged workers' retirement savings by failing to follow a prudent process for administering the Plan and by failing to act in the exclusive interest of Plan participants.

In this opinion we address Plaintiffs' challenge to the district court's dismissal of their claims for lack of standing. We address the district court's dismissal of Plaintiffs' remaining claims for failure to state a claim and its denial of leave to amend in a summary order issued simultaneously with this opinion.

Participants in a defined contribution benefit plan governed by ERISA must plausibly plead a constitutionally-cognizable individual injury to establish that they have Article III standing to obtain monetary relief for alleged ERISA violations. We agree with the district court that Plaintiffs here lack Article III standing because they did not allege that they suffered any financial loss affecting their individual retirement accounts arising from Defendants' allegedly imprudent share class selection and failure to investigate the availability of alternative funds, or from Defendants' alleged breach of fiduciary duty in providing indirect compensation to the Plan's recordkeeper. Plaintiffs had not directed their retirement contributions into the allegedly imprudently or disloyally managed investment options and thus did not allege any individual injury arising from Defendants' management of those options. Moreover, because Plaintiffs did not plausibly allege that they personally suffered any injury, they also lack class standing to assert their share-class claim, alternative fund claim, and indirect compensation claims on behalf of the class.

For the reasons set forth below and in the summary order, we AFFIRM the judgment of the district court.

## BACKGROUND[1]

Plaintiffs are four former employees of Tops Market and Price Chopper Supermarkets and participants in the Northeast Grocery 401(k) Savings Plan (the "Plan"), an employee pension benefit plan covered by ERISA, 29 U.S.C. § 1001 *et seq*. Plaintiffs assert that the Plan's fiduciaries mismanaged the Plan and violated ERISA. They brought this action on behalf of themselves, the Plan, and a proposed class of participants and beneficiaries of the Plan as of January 1, 2018. Plaintiffs sought, *inter alia*, disgorgement and injunctive relief, including the replacement of some of the Plan's fiduciaries.

Defendants are fiduciaries of the Plan: the Plan's sponsor, Northeast Grocery, Inc. (the post-merger parent company of Tops Market and Price Chopper Supermarkets); the Plan's administrator, the Administrative Committee of The Northeast Grocery 401(k) Savings Plan (the "Committee"); and the Committee's members, John and Jane Does 1-30, in their capacity as fiduciaries of the Plan (collectively, "Defendants").

The Plan is a defined contribution plan, which means that it "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). Put differently, participants in such a plan "maintain individual investment accounts," for which the accounts' value "is determined by the market

---

[1] We draw our presentation of the facts from Plaintiffs' complaint.

performance of employee and employer contributions, less expenses." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 969 (2d Cir. 2023) (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015)), *rev'd and remanded on other grounds*, 145 S. Ct. 1020 (2025). The Plan's administrators select for plan participants a menu of investment options, from which the participants themselves choose where to invest their retirement contributions. *Id.*

Here, the Plan provided participants with a menu of twenty-eight pre-selected investment options. Plaintiff Gail Collins invested her retirement contributions in the Wells Fargo Stable Return Fund, Lord Abbett Multi-Asset Balanced Fund, Dreyfus Strategic Value Fund, and T. Rowe Price Blue Chip Growth I Fund. Plaintiff Scott Lobdell invested his retirement contributions in the MFS Value R6 Fund, the T. Rowe Price Blue Chip Growth I Fund, and the American Funds NewPrsp R6 Fund. Plaintiffs Dean DeVito and Michael Lamoureux invested their Plan assets in "one or more of the funds" discussed in the complaint, though the complaint did not specify which ones. Compl. ¶¶ 16, 18, App'x 10.

Plaintiffs sought relief for Defendants' allegedly imprudent and disloyal management of the Plan under 29 U.S.C. §§ 1132(a)(2) and (a)(3).[2] Their complaint principally alleged that Defendants

---

[2] Section 1132(a)(2) provides that a plan participant or beneficiary may bring a civil action to obtain "appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 provides: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the

failed to establish a prudent process to select and monitor the Plan's investments, performance, and fees by failing to investigate the availability of lower-cost, equally or better performing share classes and alternative funds; monitor the performance of fund managers; monitor and control the performance and related trust costs of the Plan's investment adviser; and monitor and control recordkeeper fees. Plaintiffs also asserted that Defendants failed to act in the exclusive interest of plan participants by seeking "open-ended investment company revenue-sharing dollars" for their own benefit. Compl. ¶ 123, App'x 31. The seven-count complaint asserted claims for breaches of ERISA's duties of prudence and loyalty, in violation of 29 U.S.C. § 1104(a)(1); co-fiduciary liability under § 1105; breach of ERISA's duty to monitor[3]; engaging in prohibited transactions, in violation of §§ 1106(a)-(b); and breach of fiduciary duty by omission.

---

fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." *Id.* § 1109(a). Although ERISA "does not provide a remedy for individual injuries distinct from plan injuries," it does "authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

Section 1132(a)(3) provides that a plan participant or beneficiary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

[3] ERISA does not expressly require that plan fiduciaries who appoint other plan fiduciaries monitor those appointed fiduciaries (here, that

The district court granted Defendants' motion to dismiss the complaint. It held that Plaintiffs failed to establish that they had Article III standing to bring claims alleging fiduciary breaches arising from Defendants' share class selection, failure to investigate the availability of alternative funds, and revenue sharing. In particular, the court found that Plaintiffs had not alleged any constitutionally-cognizable injury in connection with the specific investment options criticized in the complaint in which Plaintiffs did not invest. By contrast, it held that Plaintiffs had standing to allege fiduciary breaches arising from Defendants' failure to monitor the performance of the portfolio managers of three funds, the Plan's investment manager's performance and costs, and the Plan's direct compensation of its recordkeeper.

The district court then dismissed the remaining claims for which Plaintiffs had standing for failure to state a claim and dismissed the complaint with prejudice, denying Plaintiffs leave to amend.

In addressing the standing factors, the district court observed that "[t]he Second Circuit has not definitively resolved the issue of whether and to what extent participants of a defined contribution plan must demonstrate individual harm in order to bring claims concerning funds that they did not personally invest in." App'x 68

---

Northeast Grocery, as the Plan's sponsor, monitor members of the Committee). We have nonetheless recognized that a plaintiff may assert a "derivative" claim against the appointing fiduciary for its failure to monitor the appointed fiduciaries in an underlying breach of a fiduciary duty. *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (per curiam) (holding that plaintiffs "cannot maintain a claim for breach of the duty to monitor [against appointing defendants] absent an underlying breach of the duties imposed under ERISA" by appointed defendants).

(citing *Garthwait v. Eversource Energy Co.*, 3:20-CV-00902(JCH), 2022 WL 1657469, at *7 (D. Conn. May 25, 2022)).   This observation prompted this opinion.

**LEGAL STANDARD**

We review de novo a district court's determination on standing.  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 (2d Cir. 2016).  When standing is challenged on the face of the pleadings, as here, we "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."   *Id*. (quotation marks omitted).   Factual allegations of standing must be plausible and nonconclusory to survive a motion to dismiss.  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145–46 (2d Cir. 2011) (per curiam) (applying the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), to a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1)).

**DISCUSSION**

Plaintiffs must establish for each claim that they have what we previously called "statutory standing," a "statutory cause of action to sue a defendant over the defendant's violation of federal law," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021);[4] constitutional, or

---

[4] We retired the appellation "statutory standing" because "statutory standing in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute."  *Am. Psychiatric Ass'n*, 821 F.3d at 359 (quotation marks omitted)).  We recognize the defunct term here solely to help clarify apparent confusion regarding the various forms of standing in the context of defined contribution plan

Article III, standing (a constitutionally-cognizable injury arising from the defendant's breach of the statutorily imposed duty); and, because this is a putative class action, "class standing" (standing to bring class claims on behalf of absent class members). *Am. Psychiatric Ass'n*, 821 F.3d at 358-59 (discussing constitutional standing); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ("*NECA*"), 693 F.3d 145, 158 & n.9 (2d Cir. 2012) (discussing class standing); *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon* ("*Ret. Bd.*"), 775 F.3d 154, 160-61 (2d Cir. 2014) (same).

There is no dispute that ERISA gives Plaintiffs a cause of action to sue Defendants . ERISA is a "comprehensive federal statute" that regulates employee benefit plans, as well as the fiduciaries who act on behalf of plan participants and beneficiaries. *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 119 (2d Cir. 2022). To achieve its goal of "protect[ing] . . . individual pension rights," H.R. Rep. No. 93-533, at 1 (1974), ERISA imposes "standards of conduct, responsibility, and obligation[s]" on plan fiduciaries, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. § 1001(b)). These standards are among "the highest known to the law." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 86 (2d Cir. 2001) (quotation marks omitted). ERISA creates a private right of action for plan participants such as Plaintiffs to sue for relief for an alleged ERISA violation. *See* 29 U.S.C. § 1132(a). Plaintiffs, who are Plan participants, allege various ERISA violations. But this "does not necessarily provide constitutional standing," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quotation marks omitted), or class standing.

---

participants' ERISA claims. In acknowledging the term, we do not intend to bring it out of retirement.

Here, Plaintiffs lack both Article III and class standing to assert several of their claims because they did not plead that they suffered any individual harm arising from Defendants' allegedly imprudent and/or disloyal management of investment options in which they did not personally invest or any plan-wide harm affecting their individual accounts. Similarly, they failed to plead any individual harm arising from Defendants' compensation of the Plan's recordkeeper via revenue sharing fees for funds in which Plaintiffs did not personally invest.

We address Plaintiffs' individual standing and class standing in turn, accepting the district court's invitation to clarify our standards applicable to the standing of a defined contribution plan plaintiff individually and on behalf of a putative class.

## I.  Individual Standing

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC*, 594 U.S. at 423 (quoting U.S. Const. art. III, § 2). To establish that they have the requisite "personal stake" in each of their claims, Plaintiffs must allege that they suffered an injury that: (1) is "concrete, particularized, and actual or imminent"; (2) was likely caused by the acts or omissions of the defendant; and (3) will likely be redressed by the requested judicial relief. *Id.* (quotation marks omitted). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* (internal quotation marks and citation omitted).

Our precedent demonstrates that defined contribution plan participants seeking to obtain monetary relief for alleged ERISA violations must allege a non-speculative financial loss actually

affecting, or imminently threatening to affect, their individual retirement accounts. *See Cent. States Se.*, 433 F.3d at 200 ("Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss." (internal quotation marks omitted) (alteration accepted)); *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121-22 & n.15 (2d Cir. 2009) (affirming dismissal for lack of standing for plaintiff's failure to allege "an identifiable and quantifiable injury" that was "specific to her"), *abrogated in part on other grounds as recognized in Am. Psychiatric Ass'n*, 821 F.3d at 359; *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (summary order) (affirming dismissal for lack of standing where plaintiff alleged "injury to [the] plan but not individualized injury to the plan participant"); *see also Thole v. U.S. Bank*, 590 U.S. 538, 541 (2020) (affirming dismissal of defined benefit plan participants' claim for lack of standing where plaintiffs failed to demonstrate actual or threatened individual financial loss arising from defendants' alleged ERISA violations).

For some of their claims, Plaintiffs satisfactorily alleged that all Plan participants were harmed by Defendants' purported fiduciary breaches (failure to monitor the performance and compensation of the Plan's investment manager, and compensation of the Plan's recordkeeper) or that specific plaintiffs were harmed in a manner that also injured other plan participants (failure to monitor the portfolio managers of three funds, in one of which plaintiffs Collins and Lobell invested their retirement assets). For others, however, Plaintiffs failed to allege that their benefits were or would imminently be affected by the performance of, or by fees associated with, investment options in which they did not personally invest. Further, they failed to allege individual harm from the allegedly flawed processes resulting in the retention of the criticized investment options or the retention of

Committee members who retained the criticized funds. Plaintiffs' conclusory allegations of plan-wide mismanagement did not plausibly allege that Defendants' purported misconduct affected all plan participants, including them. Accordingly, the district court correctly dismissed on Article III standing grounds Plaintiffs' claims for (1) breach of the duty of prudence based on a failure to investigate the availability of alternative share classes; (2) breach of the duty of prudence based on a failure to investigate the availability of alternative funds; (3) breach of the duty of prudence based on Defendants' failure to monitor indirect recordkeeper costs; and (4) breach of the duty of loyalty regarding funds with revenue sharing. We address each claim in turn.

### A. Failure to Investigate the Availability of Alternative Share Classes

The complaint asserted that the Committee acted imprudently by failing to investigate the availability of lower-cost and equally or better performing share classes. The existence of less expensive and equal and/or better performing share classes for a particular fund may support an inference that a fiduciary acted in violation of ERISA by imprudently selecting and/or failing to properly monitor and remove the more expensive share class. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 108-10 (2d Cir. 2021). Plaintiffs, however, lack Article III standing to press their share-class claim. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (rejecting the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"); *TransUnion*, 594 U.S. at 426-27.

Plaintiffs did not allege that they suffered any individual injury arising from Defendants' failure to investigate the availability of

lower-cost and equally or better performing share classes. The complaint identified three investment options whereby the Committee, despite the availability of better alternatives, allegedly chose more expensive share classes: the T. Rowe Price Retirement Trust "A" target date series, the Loomis Sayles Small Cap Value Fund, and the Loomis Sayles Small Cap Growth Fund. But the complaint did not allege that any Plaintiff invested in any of these imprudent funds. Nor did it allege, in a non-conclusory fashion, that any Plaintiff invested in any other fund for which lower-cost and equal-or-better-performing share classes were available. ERISA "does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach of the duty," which Plaintiffs failed to do here. *Kendall*, 561 F.3d at 120.

Plaintiffs argue that they pled facts from which the district court should have drawn an inference that Defendants' alleged imprudence injured them. They reason as follows: by mishandling the specified funds, Defendants demonstrated that the management of all funds was flawed and, inferentially, that all accounts were injured. *See* Compl. ¶ 58, App'x 19 (asserting with regard to Plaintiffs' alternative funds claim that "[a] reasonable inference is that if the Committee's plan-wide decision-making was flawed" as to certain investment options, "that same flawed decision-making affected every other choice made for the limited participant menu of 28 offerings"); *see also* Pls.' Br. 11-14 (arguing same as to their other claims). This conclusory assertion does not demonstrate that Plaintiffs suffered "an invasion of [their] legally protected interest" that affected *them* in a "personal and individual way," as the constitution requires. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992). We decline Plaintiffs' invitation to speculate that there

were injuries to their own investment accounts based on the alleged retention of more expensive share classes in three of twenty-eight investment options, in which no Plaintiff chose to invest his or her retirement assets, and their similar invitation to speculate about harms that they did not plead with respect to their other claims.

**B. Failure to Investigate the Availability of Lower-Cost, Better Performing Alternative Funds**

Next, the complaint asserted that the Committee imprudently failed to investigate the availability of lower-cost, better performing alternative funds.  It identified two allegedly expensive and/or underperforming investment options resulting in millions of dollars of lost opportunity costs to Plan participants: the Loomis Sayles Small Cap Value Fund and the Fidelity Freedom 2030 Fund.  The existence of lower-cost, better performing alternative funds, when combined with other circumstantial evidence of imprudence, may support an inference that a fiduciary breached its duty of prudence by failing to monitor investments and remove imprudent options.  *See Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 721 (2d Cir. 2013).  Plaintiffs' statutory cause of action to assert an alternative fund-based imprudence claim, however, did not confer Article III standing.  Again, Plaintiffs did not allege any personal injury arising from the Committee's allegedly imprudent retention of the two lower-performing, higher-cost funds.  No Plaintiff invested in either fund, and the complaint did not allege in a non-conclusory fashion that any of the funds in which Plaintiffs did invest suffered the same defects.

### C.  Failure to Monitor Indirect Recordkeeping Fees

The complaint further alleged that the Committee acted imprudently by permitting the Plan's recordkeeper, Fidelity Management ("Fidelity"), to receive excessive compensation through funds with a revenue sharing scheme that indirectly compensated Fidelity.  Allegations of excessive fees in relation to the services rendered may raise an inference of imprudence, *see Singh v. Deloitte LLP*, 123 F.4th 88, 93-95 (2d Cir. 2024), but, again, Plaintiffs' statutory standing did not establish that they also had Article III standing to press their revenue sharing-based imprudence claim.

Plaintiffs did not plead that they were individually harmed by Defendants' failure to monitor the revenue sharing scheme.  Plaintiffs identified only one fund, the Victory Small Company Fund, as an investment option for which a percentage of the plan's assets were improperly "diverted" to Fidelity.  Compl. ¶¶ 92, 107, App'x 25, 29.  The complaint, however, did not allege that any Plaintiff invested in that fund or, in a non-conclusory fashion, that any Plaintiff invested in any other fund with revenue sharing.  It thus did not allege any injury to any Plaintiff arising from the failure to monitor the use of revenue sharing.

### D. Breach of the Duty of Loyalty

The complaint also alleged that the Committee breached its duty of loyalty by including certain excessively costly funds with revenue sharing that benefited the Committee at the expense of Plan participants.  Plaintiffs identified two higher-cost funds allegedly selected for disloyal reasons: the Blackrock Total Return Fund and the Dodge & Cox International Fund.  Because Plaintiffs did not allege that they invested in either fund, or in any other specific high-cost

fund with revenue sharing, Plaintiffs did not allege any injury to themselves arising from the allegedly disloyally-selected investment options.

### E.  Standing Generally

Finally, we address Plaintiffs' erroneous contention that the fact that they have standing as to some of their claims means that they have standing to bring all of their claims.  Standing is "not dispensed in gross."  *TransUnion*, 594 U.S. at 431.  To withstand a motion to dismiss for lack of standing, Plaintiffs must demonstrate that one or more of the individual plaintiffs can press each of their claims for each form of relief sought.  *Id.*  They have not.

## II.     Plaintiffs' Class Standing

Plaintiffs, who are suing on behalf of a proposed class, also did not plausibly allege that they had "class standing" to proceed with the claims for which they lack Article III standing.  Again, to establish "class standing," a showing of individual injury is required.

We agree with Plaintiffs and the district court that members of a defined contribution plan who chose certain investment options may in certain circumstances bring claims on behalf of other participants that chose entirely different investment options. Plaintiffs, however, may only challenge, on behalf of the class, Defendants' "general practices which affect *all* participants," including Plaintiffs, Pls. Br. at 9 (emphasis added), or Defendants' practices that are sufficiently similar to the practices causing, or imminently threatening to cause, harm to Plaintiffs' individual retirement benefits.  This is because our class standing test permits Plaintiffs to assert claims on behalf of absent class members only if they plausibly alleged "(1) that [they] personally ha[ve] suffered

some actual injury as a result of the [purportedly] illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA*, 693 F.3d at 162 (ellipsis, internal quotation marks, and citations omitted). For the reasons described above, Plaintiffs failed the first step of our class standing test because they did not plausibly plead that they suffered any individual injury in connection with the identified claims.

Plaintiffs' theory of standing is inconsonant with our class standing test, which was designed to ensure that a named plaintiff may "properly assert claims" on behalf of absent class members because his litigation incentives "are sufficiently aligned with those of the absent class members." *Ret. Bd.*, 775 F.3d at 161. Alignment occurs when the proof that a named plaintiff develops for his individual claims tends to prove the class claims. *See id.* at 161-62. We cannot conclude that Plaintiffs' claims implicate the "same set of concerns" as absent class members' claims because, without any showing of an individual injury, we cannot find that Plaintiffs have any proof of their own claims, let alone that proof supporting their claims would tend to prove the class claims. *See NECA*, 693 F.3d at 162-63 (reasoning that even if a named plaintiff's injury may "flow from" the same source as other class members' injuries, we cannot conclude that the respective injuries "implicate[ ] the same set of concerns" if they have "the potential to be very different" and might well "turn on very different proof").

Plaintiffs, as some district courts have done, would sidestep the failure to plead any actual injury by extending our decision in *Long Island Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County* ("*Head Start*") to hold that a

defined contribution plan participant has standing to obtain monetary relief when he alleges an injury to the Plan as a whole, whether or not that participant has demonstrated an individual loss. 710 F.3d 57 (2d Cir. 2013). *Head Start* stated in a footnote that participants in an employee welfare benefit plan who "asserted their claims in a derivative capacity" had standing to "recover for injuries to the Plan caused by the Administrators' breach of their fiduciary duties." *Id.* at 67 n.5. Relying on that footnote, Plaintiffs argue that they have standing to bring claims on behalf of the Plan because "the fact that only some of the[ ] alleged losses manifested themselves in [Plaintiffs'] individual accounts does not deprive [them] of standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred." Pls.' Br. at 13. We think Plaintiffs read *Head Start* too broadly.

*Head Start* is not precedent for the proposition that Plaintiffs have Article III standing absent individualized financial harm. Its facts preclude such a reading. The *Head Start* plaintiffs suffered a financial injury: the defendants' misconduct rendered the plan unable to satisfy a judgment for the plaintiffs of more than $700,000. *See* 710 F.3d at 63.

*Head Start* also cannot stand for that proposition as a matter of logic. Losses to defined contribution plan participants' individual accounts arising from an ERISA violation are losses to the plan, because all assets in a plan, including contributions allocated to individual accounts for bookkeeping purposes, are plan assets. *See* 29 U.S.C. § 1002(34); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 262 (2008) (Thomas, J., concurring). But that logic does not always work in reverse. Losses to plan assets arising from an ERISA violation are not necessarily losses to an *individual participant*, vesting that participant with a personal stake in a case or controversy. *See Taveras*,

612 F. App'x at 29 (rejecting plaintiff's similar theory of standing because "[i]t was possible that the [plan] lost value while [her] individual account did not").

Finally, ERISA plaintiffs cannot rectify a deficient showing of an injury-in-fact by asserting that they have standing as representatives of the plan. *See Thole*, 590 U.S. at 543 (holding that plaintiffs lacked Article III standing to sue as representatives of a plan because they had not alleged any concrete and particularized injuries attributable to the alleged mismanagement). "[I]n order to claim the interests of others, [Plaintiffs] themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Id.* at 543 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the summary order issued simultaneously with this opinion, we AFFIRM IN PART and VACATE IN PART the judgment of the district court and remand for further proceedings consistent with this opinion and the summary order.